HENRY KREBBS ET AL. V. WILLIAM HOLWAY.

FILED FEBRUARY 23, 1899.    No. 8410.

1. **Pleading**: AMENDMENT: REVIEW: PRESUMPTIONS. It cannot be assumed in the supreme court that the district court erroneously overruled a motion to cause to comply with a former pleading in the county court a pleading in the district court, by striking from the latter certain language, when the record in the supreme court fails to show what pleading was filed in the county court.

2. **Sales**: CONTRACTS: EVIDENCE. Allegations of a failure to deliver cattle upon demand pursuant to a contract of purchase and sale are not sustained by proofs of a failure to return earnest money paid upon an agreement, at the time of purchase, that, if conditions not then known, but subsequently to be ascertained, should not prove to be satisfactory, the earnest money would be refunded.

ERROR from the district court of Douglas county. Tried below before BLAIR, J.    Reversed.

C. J. Smyth, for plaintiffs in error.

Charles Offutt, contra.

RYAN, C.

The first pleading in the transcript of the record of this case is an amended petition filed in the district court of Douglas county. The defendants therein named filed a motion to strike from this petition certain averments so that it might describe the same cause of action that, as was alleged in the motion, had been plaintiff's cause of action in the county court. As already indicated, the

9

transcript does not purport to describe any issue presented in the county court. In the bill of exceptions we find what are styled a "petition" and "an amended petition," purporting to be filed in the county court. Neither of these is certified as a transcript and each is apparently the original paper filed in the county court. Even if we could take notice of such proofs, there is nothing to indicate what was intended to be established by them. There is nothing in the motion to show that any resort was to be had to proofs outside the record before the district court. If we are confined to the record as it stood in the district court, there is nothing in the record before us to show that these pleadings were ever filed in the district court. If these pleadings are to be considered as in the nature of extrinsic evidence, and if proofs might be admitted of that kind,—propositions upon which we do not pass,—we meet with the insurmountable objection that there is nothing in the record to show that they were submitted on the hearing of the motion to strike out parts of the petition. For these reasons we cannot determine whether or not there was a departure from the cause of action described in the county court.

In his amended petition above mentioned William Holway sought to recover, and did recover, against Henry Krebbs and Charles R. Ferrall, individually and and as partners under the firm name and style of Henry Krebbs & Co., a judgment in the sum of $450, with interest from March 1, 1893. The essential part of the amended petition was as follows: "That on or about the 1st day of March, 1893, the said defendants, then and there being engaged in the live stock commission business as partners, received from the plaintiff $450 as part purchase price of about eighty-three head of cattle, known as the Chumley cattle, which plaintiff then purchased by bargain with defendants—but who were the owners of said cattle plaintiff cannot state—with the agreement that said cattle should be delivered to plain-

tiff by one R. C. Chumley to be weighed at the station of shipment, when plaintiff would pay the remainder of said purchase price; that the defendants accepted said money and agreed that said cattle should be, as aforesaid, delivered to this plaintiff, or if not so delivered, that they, the said defendants, would refund the said $450." This language was supplemented by averments of a failure to deliver the cattle in pursuance of the contract above described, of a consequent failure of consideration, and of the refusal by defendants to repay to plaintiff the said $450, though said defendants knew of the aforesaid failure of consideration. There was a verdict and judgment as prayed in said petition, and these are assailed in this court by the petition in error of the judgment defendants.

The firm of Henry Krebbs & Co. was a live stock commission firm doing business in South Omaha on, as well as before and after, March 1, 1893. The cattle described were, at the time of the alleged purchase, on the ranch of R. C. Chumley, in Custer county. There had been an oral contract between Chumley and one Tierney, whereby the latter became the owner of these cattle, but they remained in the possession of Chumley, who had authority to sell them,—an authority which he exercised by making a contract with Eli Grubb, who was a traveling soliciting agent for Henry Krebbs & Co. The live stock commission firm of Gasman & Dudley, at the times herein involved, was doing business at South Omaha, and William G. Allen was one of its soliciting agents. In February, 1893, Allen proposed to Henry Krebbs & Co. to purchase the Chumley cattle at an advance of ten cents per hundred pounds over the price Grubb had agreed to pay for them. This proposition was accepted. It was made for plaintiff William Holway, and as earnest money there was paid by Gasman & Dudley, by check, the sum of $450 to Henry Krebbs & Co., and this action was for the recovery of this sum with interest.

The disagreement between the parties to this action

arose from the fact that it was not understood between the firm of Gasman & Dudley and the firm of Henry Krebbs & Co. where delivery of the cattle was to be made. It was the understanding of Gasman & Dudley that the delivery was to be at Broken Bow, a railroad station twenty miles distant from Chumley's ranch, and Allen testified that a member of the firm of Henry Krebbs & Co. created that impression by reading to him, during the negotiations, a letter in which the place of delivery to Grubb was described as Broken Bow. Plaintiff William Holway testified with reference to his efforts to get possession of the cattle as follows: "I told him [Chumley] that I was taking steps to come and see the cattle; that I wanted to make arrangements to weigh them at Oconto instead of Broken Bow; that I had bought them to weigh at Broken Bow. He said they were not to be weighed at Broken Bow or Oconto; they were to be weighed at my yard. I said that was not the way I bought those cattle. He said that was the way he sold those cattle and the way they must be delivered. I says: 'Mr. Chumley, I will come and receive those cattle on these terms. You must hold those cattle a few days until we can see what the law says. There is a lawsuit in Omaha. Just hold those cattle for a few days and I will straighten the matter out.'" This was a few days before March 9, 1893, the day the cattle were to be delivered. Further testifying on cross-examination Mr. Holway said: "As I understood the contract, they were to be delivered on or before the 10th. * * * I understood that I had until the 10th to carry out my contract." On redirect examination Mr. Holway used this language: "I said to Mr. Chumley that he must hold those cattle for a few days until we could get the facts in the case in Omaha; that I would pay the charges for feeding the cattle until I could see how I would receive the cattle. I didn't want to take them upon his contract. I wanted the cattle as I bought them. He wouldn't deliver them that way."

Mr. Chumley did not testify with reference to the above conversation, but he did testify that the cattle were by him delivered to Grubb on March 9 at Chumley's place, where they were weighed; that these cattle were moved the evening of the day of delivery to the Crewdson ranch, from which place they were the next morning taken a distance of six miles to Oconto, a railroad station, from whence they were on the same day shipped to South Omaha to Henry Krebbs & Co., by whom, in that market, one car load was sold, and the remainder were sold in Chicago. Mr. Grubb telegraphed Henry Krebbs & Co. March 7, 1893, as follows: "Holway has squealed on the Chumley deal. Hold the advance money. I will ship the cattle Friday myself." In 1893 March 10 was Friday, and on that day Grubb telegraphed Henry Krebbs & Co. from Oconto as follows: "Have tendered Allen the cattle. He refuses. Ship myself. Hold advance money. Wire markets." With reference to the tender of the cattle to Allen, referred to in the above telegram, Mr. Chumley testified that on the morning of March 9, 1893, Allen was at his place and wanted to know what was the contract between Chumley and Grubb, and was told that the cattle were to be weighed at Mr. Chumley's place, and that the shrinkage was three per cent from the hour and date the weighing commenced. Allen then asked, "If there was any monkey work about that," and was assured by Chumley that there was not. About an hour after the conversation Grubb and other parties came to the ranch to weigh the cattle. When they reached the ranch Allen was going down the river on the further side from Chumley's house. James Kelley was sent after him. When Kelley overtook Allen he told Allen that Grubb wanted him to come back and weigh those cattle; that Grubb was ready to deliver them to him, whereupon Allen answered that Kelley might tell Grubb to go to a designated place of eternal torment and that he, Allen, did not want the cattle, which he referred to by an epithet which would indicate that, in

Allen's mind at least, those cattle were qualified to accompany Grubb to the place to which he had consigned him.

On the oral argument we were impressed with the idea that this was a refusal to receive the cattle, but a critical examination of the record satisfies us that on this point we labored under a misapprehension. Mr. Holway, without contradiction, testified that a few days before the day on which the cattle were to be delivered he saw Mr. Chumley and informed him that he would not take the cattle on the terms as understood by Chumley, but that his own understanding was that they were to be weighed at Broken Bow. Mr. Chumley was then in possession of the cattle and was managing them for Grubb, whose principal was the firm of Henry Krebbs & Co. As we shall hereafter show, the request of Mr. Holway that there should be a delay to enable communication to be had with South Omaha was, under the circumstances, a reasonable request. It is very evident that soon after this request Grubb telegraphed to Henry Krebbs & Co. that Holway had squealed; that the money advanced should be held, and that Grubb would ship the cattle himself on Friday. An apparent anxiety to get rid of the Chumley deal was further evidenced by the telegram of Grubb sent two days later, in which he said Allen had refused a tender of the cattle, that Grubb would ship them, and requesting that Henry Krebbs & Co. should hold the advance money and wire markets to Grubb.

That we may explain why the request of Holway for delay was reasonable under the circumstances it is necessary to state one fact, which, that its importance might not be lost sight of at the proper time, we have hitherto omitted to mention. When the firm of Gasman & Dudley was about to complete the purchase of the cattle Mr. Krebbs told Mr. Dudley that he, Krebbs, had heard the cattle were to be delivered at Broken Bow, but did not know whether that was the fact or not. When Dudley

gave Krebbs the check for $450 Krebbs testified that Dudley said: "If this deal is not right you will return this, will you?" To which Krebbs said that he answered, "Yes." To the cause of action to which this evidence would be pertinent it is not of special importance where the cattle were in fact to be delivered under the contract between Grubb and Chumley. When the contract was made between the commission firm in South Omaha it was a recognized fact that there was no satisfactory knowledge possessed by Henry Krebbs & Co. as to what place of delivery had been agreed upon between the parties in Custer county, Henry Krebbs, however, stated that he had heard that the delivery was to be at Broken Bow. Mr. Dudley was, therefore, warranted in assuming that Broken Bow was probably the place of delivery, but to guard against the contingency of being misled by the statement of Mr. Krebbs, Mr. Dudley exacted a promise that if the deal was not right Henry Krebbs & Co. would return this advance payment. Under these circumstances it is possible that Henry Krebbs & Co. owed a duty to Gasman & Dudley and that firm's principal, whoever he might be, and that that duty was ignored when Henry Krebbs & Co. permitted its agent, Mr. Grubb, to ship the cattle to South Omaha and itself sold this stock on the South Omaha and Chicago markets.

On this evidence the question presented is not as to the right to recover upon a failure to deliver upon demand as agreed, but it is the right to a recovery on account of money intrusted to Henry Krebbs & Co. upon the express agreement of that firm that if there was a disagreement as to terms made by other parties, the money advanced would be returned. These proofs, however, were on a different theory from that on which the amended petition was drawn. In that pleading plaintiff alleged the payment of $450 as earnest money on the purchase of the cattle; that said cattle were to be delivered to plaintiff to be weighed at the station of shipment; "that defendants accepted said money and agreed that said cattle

should so, as aforesaid, be delivered to this plaintiff, or, if not so delivered, that they, the said defendants, would refund the said $450." There was not sufficient evidence to sustain the averment which followed that above quoted, that plaintiff, "in manner and form as agreed, made demand for the delivery of said cattle in pursuance of said contract, but the same were not delivered to plaintiff, and thereby the consideration for said payment so made to the said defendants failed." There was in fact no demand shown. The conversation between Chumley and Holway did not fulfill the requirement of a demand for performance, for it was as early as March 7, 1893, and without question the delivery was not to be made until the second day thereafter. Mr. Holway's request was not for a delivery of the cattle on the terms as he understood them, but that Chumley should hold the cattle until Holway could communicate with parties in Omaha. This delay was expected by Holway to extend beyond March 9, for he offered to pay for the subsistence of the cattle during the time required beyond March 9.

The instructions followed the theory of the petition and were without reference to a cause of action in support of which the evidence introduced might be pertinent. On account of the errors indicated the judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent herewith.

REVERSED AND REMANDED.